Our first case for argument today is 22-1257 Uniloc v. Google. Mr. Jackson, please proceed. Thank you, Your Honor. May it please the Court. So the board below erred in its implicit claim construction of the scanning step and also the relationship, the understanding between the scanning step and the selecting step, as well as it erred in applying those constructions to the Paulson reference, the prior art reference. So one of the foundational principles of the board's decision, as well as the petition, was that in Step 402 of Paulson, it sets the frequencies that are to be scanned. And in Step 404, that Paulson scans the exact same frequencies that were predetermined in Step 402. A problem with that argument is that Paulson is very clear in Figure 5 that the sampling that it does is outside the bounds of the range of frequencies that can be selected in Step 402. So it can't be that Step 402 determines or selects, identifies the predetermined frequencies that have been scanned, allegedly, in Step 404. And I'll note that Paulson never actually uses the phrase scan or any variation of that word in the reference anywhere. It talks about sampling. It creates a noise characteristic across an entire spectrum. And so it's not looking at the frequencies that were predetermined in Step 402. So Paulson doesn't, therefore, disclose predetermined frequencies or the scanning of predetermined frequencies. And moreover, Step 404 was relied upon to select, I'm sorry, to scan predetermined frequencies for a free frequency. So it's got to detect a free frequency in that step. But Paulson is very clear that it doesn't determine potential transmission frequencies until later in the process at Step 406. So again, the step relied upon here for the scanning. So what you're saying now feels like a turning argument. And this is a fact question where we have to give substantial evidence deference. And the Board, in addition to interpreting Paulson, relied on Mr. Lipoff's testimony. How do you get around that in this scenario? Whether you're right in a de novo standard isn't the standard. It's substantial evidence. And the Board interpreted the relationship between 402 and 406 differently than you're suggesting. And Mr. Lipoff gave testimony, which they relied on. How isn't that the substantial evidence? And I think we cite these cases on page 24 of our opening brief. If the testimony is clearly inconsistent with the reference, then the testimony is to be disregarded. It's not to be relied upon. So our position is that Mr. Lipoff has clearly misread Figure 4 and Figure 5 in the associated text of Paulson and is not to be given any credit toward the substantial evidence standard. Reading the reference itself also contradicts the Board's analysis. So again, the Board relied on Mr. Lipoff's testimony to come to its conclusion, and therefore I think that the Board's analysis and the, quote, substantial evidence that would support that are undermined by that misreading of the Paulson reference. So the predetermined frequencies, I think also, and, Your Honor, I appreciate that I think this is you could view it as a question of fact. I think you could also view at least part of the issue in this case as being a question of law as it relates to the way the Board implicitly understood the claim language. It said it wasn't making any explicit claim constructions. It wasn't necessary here, but then it applied the claims in such a way that Did you ask for a claim construction? Yes, Your Honor. We did ask below, but the court, and I don't remember the What claim construction did you ask for? Your Honor, I'd like to look at that before my rebuttal, and I'll come back up and identify that for you. We hear this argument all the time when people have lost and they want to try to transform substantial evidence into a legal question. But if you didn't really, if you're not coming up here and say, We asked for this claim construction. The Board clearly didn't follow it, and its claim language is wrong, then what can we do? It's a substantial evidence question. You can try to argue implicit claim construction all you want, but it doesn't sound like one to me. Your Honor, if I could, on rebuttal, respond to that. I mean, it's not really fair to your opposing counsel to not be able to respond to an opening argument, but it's fine. I would be relying on the Board's decision because the Board typically lays out the claim construction disputes in its analysis. So I'll look for that to see if that's discussed here in the opinion. So having said that, Your Honor, I appreciate your comment, certainly. But I think that the analysis clearly contradicts the way Paulson describes the operation here and the way that it was relied upon in the Board. Everything for the scanning step was put in Step 404. There's not a real, I think, debate that the analysis of locating the potential transmission frequencies doesn't come until Step 406. That's described in Column 13 of Paulson, roughly lines 28 to 49. So that comes after the sampling step 404 has occurred. So it can't be that there were this determination of potential frequencies that could be transmitted in Step 404 because that determination is not made until Step 406, where it's the two-step analysis. One, the question is, is it a clear frequency? And secondly, is that frequency one that the receiving device can demodulate? So if it can't demodulate them, then it can't possibly be a candidate for a predetermined frequency. So that determination doesn't occur until Step 406. So it's not part of the scanning. It can't be part of the scanning step. So you want us to ignore the expert testimony and read this reference for ourself and make factual findings about what it discloses that's contrary to the Board? We're asking the panel here to look at the prior reference as compared to Mr. Lipov's testimony, and you'll see that the two don't align. How will we see that? He's an expert. I'm an English major. Well, it's the analysis that I just laid out, Your Honor, and you can see where he's... But how do I know you're more correct than the expert is correct? This is why we have a substantial evidence standard, which is we are not fact finders and we are not experts. And if there's factual evidence supporting the Board's decision, we have to defer to it. Yes, I understand, Your Honor. If there are no other questions, I'll reserve the remainder of my time. Thank you, Mr. Jackson. Thank you. Thank you, Your Honor, and may it please the Court. As the Court seems to appreciate, there is substantial evidence here. Most of the questions that are involved in this case are in fact... Just out of curiosity so we can put this issue to rest, do you understand this appeal to be about a claim construction matter of law, or I really only understood the appeal to be a substantial evidence question of what's disclosed in Paulson? That is correct, Your Honor. It is a substantial evidence question. There are sort of two aspects of the claims that they're contesting, scanning a plurality of predetermined frequencies and scanning for a free frequency. On scanning a plurality of predetermined frequencies, they did not raise any claim construction that I'm aware of, any dispute in relation to that aspect. When it comes to scanning for a free frequency, they did raise claim construction issues, but we addressed those in the brief, and we think that you don't even need to get there because the Board made factual findings about how Paulson's system is essentially identical to the 952 patent's system in the relevant ways, and in particular the way that the system scans by sampling for noise and then compares that noise that's sampled to a predetermined threshold. That aspect is the same across both references. So you don't really need to get to a question, a claim construction issue, that they raised about scanning for a free frequency because substantial evidence supported the Board's view that systems are essentially the same, so wherever they might try to draw the line between scanning and selecting, which is what Mr. Jackson was talking about a moment ago, that same set of lines would cover Paulson. So yes, that's a long way to answer your question. One thing I'd like to point out on scanning a plurality of predetermined frequencies  and it makes sense that it did so because it gives meaning to Step 402 in Paulson. Under Unilock's view, the predetermined frequencies, what Paulson refers to as the initially determined frequencies in Step 402, they essentially have no purpose later in the process. They haven't identified in their briefing, and I haven't heard today yet from Mr. Jackson, any reason why there would be any initial determination at Step 402 that would then be used later by Paulson. It's essentially disregarding those frequencies, whereas under, as Google's expert testified, there is a purpose. You're trying to rule out frequencies that you just know you're never able to use because that initial determination is based on the theoretical capabilities of the transmitting device and the receiving device. And so there's a reason why Step 402 exists, but under Unilock's view, they essentially wipe that reason out. Well, I mean, isn't it even more? Doesn't Figure 4 directly link the output of Step 402 to the input of Step 404? It absolutely does, Your Honor. So turning to scanning for a free frequency, Unilock primarily raises two arguments there, that the scanning and selecting steps need to be different, and that's their first argument. But Google and the Board both identified different aspects of Paulson for the scanning feature and for the selecting feature. So their argument does not actually allege any error, really, in what the Board did or what Google's petition advanced because we treated them as different, identified different things in Paulson, talked about 404 and the following steps being the scanning, and then the selecting happens at 414. And then Unilock also has argued as their second argument that the scanning itself must identify the free frequency. But the problem with that argument is that in the 952 patent, they say that the scanning finds a free frequency by first sampling for noise and comparing to a threshold, and that that all is part of the scanning that happens in the 952 patent. But when they look at Paulson, which also discloses sampling for noise and then comparing to a threshold, they say that that comparison is actually not part of the scanning and needs to be considered part of some other step. And that's just inconsistent between the two references, between the 952, the approach they're taking there for their own patent, versus how they're viewing Paulson. And that's an unreasonable view of scanning for a free frequency. And again, Mr. Lipoff's testimony is the only evidence of record from a skilled artisan on this point, right? That is correct, Your Honor. Kind of hard for us to reject it on appeal when the Board credited it. I fully agree with that. Anything further? No, Your Honor. Thank you, Counsel. Mr. Jackson, you have some rebuttal time. Thank you, Your Honor. So to respond to Judge Hsu's question, unfortunately the entire patent owner response is not reproduced in the appendix. But at APPX 324 to 326, there is the discussion about the claim language that we're talking about and what it means. But it doesn't seem to be under a heading called claim construction. Where to begin? So let me just start with one of the last things Google's counsel just talked about, which was the selecting in Step 414. Again, if you read this text associated with Step 414, it doesn't say selecting. In fact, you can look here in Figure 4. It talks about what it does in 404 is it associates a frequency with a geographic location. And in the reference, it talks about doing that so that it doesn't have to go through this process again every time it wants to. I mean, you're getting up here and telling us your view of how Paulson works, but there's an expert from Google that says Paulson works a different way than you're describing. And mere disagreement with that isn't enough. I mean, the Board found it credible. We have a very high standard for overturning credibility determinations of experts. Just re-arguing with the experts' opinions doesn't show why it's so completely wrong that we should disregard it. Your Honor, I appreciate that. I do. We're relying on the Homeland Housewares case. Well, I understand the case law, but you're not arguing that this is so completely outside. You're just saying this is our view of Paulson. Well, he has another view. I mean, unless you can show that his is inherently contradictory or it completely misreads the language, but you're just arguing what Paulson says. Well, that is our argument, Your Honor, which is it's inherently contradictory to what the reference actually says, and therefore we can't rely on his testimony. Well, why is it inherently contradictory? Because the reference doesn't specifically say that it operates in the way you do either. I'm just paraphrasing what's said in the reference or quoting from the reference. I'm not trying to re-characterize the reference in any way. I mean, yeah, but you're just arguing the reference. What you need to be arguing is he said X about the reference. That's flatly inconsistent with this language. I haven't heard any of that from you. I mean, you don't need to. I mean, that seems to be the only way to get around an expert opinion is to argue what's wrong with the expert's opinion, not argue what's your view of the reference. And, Your Honor, I'm not doing a good job, but that's what I'm trying to do is to say, because the Board's decision was based on what Mr. Lipoff said. So when I said the Board says this and it's inconsistent with the reference, perhaps I should have said Mr. Lipoff's testimony was X and it's inconsistent with the reference. But that is the point I'm trying to make, Your Honor, which is Mr. Lipoff's testimony contradicts what the reference explicitly says about the alleged scanning step, which is really sampling in 404, and the selecting in 414. In particular, with Mr. Lipoff's testimony about how in 404, Paulson only samples the frequencies that were selected in 402. Again, that's clearly contradicted by the text discussing 402 and 404. And also, there's no discussion, again, this contradicts Mr. Lipoff's testimony, there's no discussion in the reference in Paulson about using the frequencies selected in 402 as the set of frequencies to be sampled in 404. Figure 4 links it directly. Figure 4 shows the output of 402 going directly into the input of 404. This is a flow chart of the process. It's saying you do step 402 first, then you do step 404. But the results of 402 are never described as being the starting point of the sampling, and we know that's not the case because if you look at Figure 5, the range of frequencies that are sampled exceeds the boundary, the upper boundary in particular, of what could have been identified in step 402. I'm just going to tell you, Counsel, I think this argument is nearly frivolous. Your Honor, I'm making the best argument I can. Yeah, but sometimes you've got to convince your client that there's no point in appealing when you have no legitimate basis for appeal, and that's kind of where we are here. Do you have anything further? Nothing further. Okay, thank you. I thank both counsel for their argument. This case is taken under submission.